UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------------X
    UNITED STATES OF AMERICA,

                          -against-

    ZUKEILA PLAZA,

                                   Defendant.
------------------------------------------------------------X

S1 22-CR-142 (VSB)

**ORDER**

VERNON S. BRODERICK, United States District Judge:

        Sentencing is scheduled for December 15, 2023 at 2 p.m. In connection with Defendant's sentencing, I have received the Presentence Investigation Report ("PSR"), the sentencing memorandum of Defendant Zukeila Plaza, ("Plaza" or "Defendant") dated December 1, 2023, (Doc. 161), and the Government's sentencing letter dated December 11, 2023. (Doc. 164.) The parties should supply the requested materials and be prepared to address the following during the sentencing hearing:

1. What is the relative culpability of the members of the drug trafficking organization ("DTO"), including CW-1?

2. Paragraph 26 of the PSR states "In certain jail calls recorded in 2020 following CW-1's incarceration, [Defendant] discussed with CW-1 the continued operation of the DTO during CW-1's incarceration."

    a. Is CW-1 the individual referenced in paragraph 66 of the PSR?

    b. Did CW-1 encourage Defendant to continue to supply crack? If so, are their recordings of such conversations?

    c. Did CW-1 benefit from the sales of crack while CW-1 was incarcerated? If so, how so?

    d. Did CW-1 plead guilty or was CW-1 convicted after a trial for the narcotics seized during the October 2019 search of Apartment 1A?

        i. Is CW-1 eligible for parole this month?

        ii. Is CW-1's earliest release date February 2024?

        iii. Is CW-1's maximum release date September 2024?

    e. Do the tapes corroborate Defendant being abused by CW-1 and/or document the alleged abusive/controlling nature of their relationship? If so, please provide copies of those tapes.

    f. Did CW-1 and Defendant continue to speak with one another either in person or over the telephone after May 2021? If so, when was the last time that they spoke?

    g. Is CW-1 a signed-up cooperator? Had Defendant gone to trial would CW-1 have been called as a witness?

    h. Was CW-1 interviewed by the Government? If so, please produce the reports and notes related to such interviews.

    i. Was CW-1 interviewed by other law enforcement agencies? If so, please produce the reports and notes related to such interviews to the extent the Government is in possession of such reports and notes.

3. Does the defense have copies of the paperwork related to the restraining order referenced in paragraph 66 of the PSR? If so, please provide copies of the documents.

4. Are there police reports related to the domestic violence/assaults referenced in paragraph 66 of the PSR?

5. Does the defense have copies of Defendant's complete medical records related to her visits to the hospital when she "went to the hospital on several occasions due to the domestic violence"? (PSR ¶ 66.) If so, please provide a copy of those records.

6. Does either party have additional information concerning Defendant's arrest and conviction documented in paragraph 55 of the PSR and referenced in the Government's sentencing letter on page 4?

    a. Were there any other residents of the apartment that was searched?

    b. In whose name was the apartment?

    c. Does the Government have the search warrant for the apartment that was searched?

7. Was the male cousin referenced in paragraph 64 who subjected Defendant and others to sexual abuse ever prosecuted?

8. On page 8 of Defendant's sentencing memorandum it states "Ms. Plaza poses little risk of recidivism." Defendant also committed the instant offense after the execution of an October 2019 search warrant of her apartment during which "hundreds of grams of crack and drug paraphernalia consistent with the manufacture of crack" were recovered, (PSR ¶ 25), and after the execution of other search warrants in Defendant's building. With regard to the potential for Defendant to recidivate, how should I view Defendant's prior conviction and sentence, the October 2019 search of her apartment, and the search of the other

apartments in her building?

9. What evidence is there connecting Defendant to the apartments searched in her building during the time period of the charged conspiracy?

10. Is there evidence connecting Defendant to the "approximately [] dozen non-fatal shootings [that] have occurred on the Block" referenced on page 1 of the Government's sentencing letter?

11. Is there evidence connecting the DTO to the "approximately [] dozen non-fatal shootings [that] have occurred on the Block" referenced on page 1 of the Government's sentencing letter?

12. On page 1 of the Government's sentencing letter it says "The defendant was a member of the DTO throughout this time period and was its principal supplier of crack from October 2020 onwards." In paragraph 27 of the PSR it states that "From May 2021 onwards, [Defendant] served as the new supplier of the DTO, taking responsibility for preparing and distributing crack, emerging from the prior supervision and guidance of CW-1, whose regular involvement in the operation of the DTO ceased at this time."

    a. How are these two sentences reconcilable?

    b. Between October 2020 through May 2021 was Defendant "supplying the members of the DTO at the direction of CW-1"? If so, what happened in May 2021 that resulted in Defendant no longer "supplying the members of the DTO at the direction of CW-1"?

13. Is Defendant continuing to prosecute *Zukeila Plaza, et ano., v. City of New York, et al.*, Index No. 26429/2020E (Bronx Cnty. June 26, 2020)? If so, how is that

4

consistent with Defendant taking responsibility in this criminal case?

14. Does the defense agree with the Government's calculation in footnote 1 of the Government's sentencing letter?

SO ORDERED.

Dated: December 14, 2023
New York, New York

*Vernon S. Broderick*
United States District Judge